2019 PA Super 314

| | |
|---|---|
| RADON CONSTRUCTION, LLC AND GREGORY RADON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| LAND ENDEAVOR 0-2, INC., JOHN ARCIDIACONO & DONNA ARCIDIACONO | |
| Appellees | No. 3527 EDA 2018 |

Appeal from the Order entered May 26, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 1601-00329

BEFORE:  OLSON, J., STABILE, J., and STRASSBURGER, J.*

OPINION BY STABILE, J.:                    **FILED OCTOBER 18, 2019**

Appellants, Radon Construction, LLC and Gregory Radon ("Greg") (collectively "Radon"), appeal from the May 26, 2017 order entered in the Court of Common Pleas of Philadelphia County, granting partial summary judgment in favor of Appellees, Land Endeavor 0-2, Inc., John Arcidiacono ("John") (collectively "Land Endeavor"), and Donna Arcidiacono ("Donna").[1] Radon argues that Greg was under duress when he signed a June 2015

---

* Retired Senior Judge assigned to the Superior Court.

[1] The May 26, 2017 order was made final on October 30, 2018 when the trial court rendered its decision on the remaining claim between the parties.

contract between Radon and Land Endeavor, a contract that Land Endeavor terminated on November 24, 2015. Following review, we affirm.

In an opinion issued following its May 26, 2017 order, the trial court explained:

This lawsuit arises from a failed joint venture agreement between [Radon] and [Land Endeavor] to develop real estate in Philadelphia. The parties' agreement provided that [Radon] would provide the labor and supplies for the project, and [Land Endeavor] would provide the financing and construction plans. [Radon was] to provide labor "at cost" so that the final cost of each home was $126,000. When the properties were eventually sold, [Land Endeavor] would receive 51% of the profits and [Radon] would receive 49%.

Subsequent to signing the joint venture agreement, the parties entered into two separate subcontract agreements—in March 2015 and June 2015. The March 2015 agreement allowed [Land Endeavor] to "terminate" the agreement "upon 48 hours notice" to [Radon] of [Radon's] default "on any of the terms or conditions" in the contract. One of those conditions required [Radon] to complete each project phase within seven days "unless otherwise specified in a work order." The contract did not give [Radon] an opportunity to cure any alleged default.

The later executed June subcontract was largely the same as the March 2015 subcontract; however, it included more specific paragraphs regarding default. The provision provided [Radon] with 48 hours to cure any breach of the parties' agreement. If [Radon] did not cure within that allotted period of time, [Land Endeavor] had the sole right to terminate the parties' venture. If [Land Endeavor] chose that route, however, [Radon] would be provided a "termination payment" which would be "equal to the sum of payment for all work performed and unpaid to the date of termination and all direct costs reasonably incurred by [Radon] in connection with the termination period."

The joint venture was ultimately terminated in November 2015 when [Radon] installed improper structural beams. On November 11, 2015, [John] notified [Radon] of the issue with the beams via e-mail. Apparently, on November 19, 2015, [Greg] met with a

structural engineer, Chris Menna, to review the issue and determine a solution. [Greg], however, misinformed Mr. Menna of [Land Endeavor's] concerns with the beams, and, as a result, Mr. Menna's proposed solution did not solve the identified problem. Therefore, pursuant to ¶ 14 of the June 2015 subcontract, [John] terminated the parties' venture in a detailed letter to [Greg] on November 24, 2015.

Trial Court Opinion, 7/11/17, at 2-3 (unnumbered) (citations to contract provisions omitted).

The trial court noted that Pa.R.C.P. No. 1035.2 governs the disposition of summary judgment motions and that the court is to view the record in the light most favorable to the non-moving party, resolving any doubts as to the existence of genuine issues of material fact against the moving party. *Id.* (citation omitted). The court then determined that Land Endeavor's termination under the plain terms of the June 2015 contract was proper. Although that contract afforded Radon 48 hours to cure a default, Radon was actually provided thirteen days to cure the problem with the beams. Nevertheless, Radon was "incapable of curing the issue because [Radon] not only improperly installed the beams, it misunderstood [Land Endeavor's] issue with the installation[.]" *Id.* at 3. The court concluded:

[Radon] argue[s] that the June subcontract is null and void because it was signed under duress. This court disagrees. "[I]n the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel." *Carrier v. William Penn Broad. Co.*, 233 A.2d 519, 521 (Pa. 1967). Here, Mr. Radon had an opportunity to consult with counsel and there was no threat of actual bodily harm. In his deposition, Mr. Radon stated he did not feel physically threatened, but rather felt "emotionally threatened." Furthermore, Mr. Radon stated he had the opportunity to speak about the contract with

- 3 -

"everyone" which he defined as his wife, father, friends, and best friend []—who consequently all advised him not to sign the contract. Mr. Radon can hardly argue he did not have the opportunity to consult with an attorney prior to signing the contract.

*Id.* Consequently, the trial court granted partial summary judgment in favor of Appellees on all counts of Radon's complaint—including the duress claims in Count IV—with the exception of Count II, which alleged breach of the June 2015 contract. The court explained that while Land Endeavor's termination under the June contract was proper, Radon had not been paid its termination payment under the terms of Paragraph 14 of the agreement. Because the court was unable to determine the amount of damages, it transferred Count II to the Philadelphia County arbitration program, confident the amount at issue was clearly within that program's $50,000 jurisdictional limits. *Id.* at 3-4 (unnumbered).

Radon filed an appeal to this Court from the May 26, 2017 order. We quashed the appeal because the May 26, 2017 order was not a final order. Order, 9/26/17, at 1. The remaining claims asserted in Count II of the complaint were subsequently submitted to an arbitration panel, which awarded Radon the sum of $13,537.92. Arbitration Award, 2/6/18. Radon appealed from the arbitration award. On October 30, 2018, the trial court awarded damages to Land Endeavor in the net amount of $16,198.68. Disposition, 10/30/18.

Radon filed an appeal from the October 30, 2018 adjudication. The trial court issued an opinion on December 18, 2018, suggesting the appeal should be dismissed in light of Radon's failure to file post-trial motions as required by Pa.R.C.P. No. 227.1. We issued a rule directing Radon to show cause why the appeal should not be dismissed for failure to preserve any issues for appellate review. We further instructed, in part:

> [I]f the appellants are merely seeking review of the May 26, 2017 order, review of this matter indicates that no judgment has been entered on the trial court docket as required by Pa.R.A.P. 301. Pursuant to this court's policy, the appellant is directed to praecipe the trial court Prothonotary to enter judgment on the decision of the trial court. The appellant is further directed to file with the Prothonotary of the Superior Court within ten days a certified copy of the trial court docket reflecting the entry of the judgment. Upon compliance with Pa.R.A.P. 301, the notice of appeal previously filed in this case will be treated as filed after the entry of judgment. See Pa.R.A.P. 905(a).

Order, 12/26/18, at 1-2.[2]

Radon complied with the Court's directive to enter judgment and filed the required certified copy of the docket reflecting entry of the judgment. The

_____

[2] Land Endeavor filed a motion to quash the appeal, asserting, *inter alia*, that permitting an appeal of the May 26, 2017 award creates the potential for two "final determinations with opposite holdings: for example, one final decision holding that [there] was duress and [a] separate final holding of no duress." Application to Quash Appeal, 1/28/19, at ¶ 16. In light of our disposition, no such scenario is created. Further, Land Endeavor fails to acknowledge that Radon appealed from the May 26, 2017 order. However, because the May order was not a final order, we quashed that appeal. Radon had no opportunity to challenge the trial court's rejection of its duress claim prior to the trial court's October 30, 2017 ruling. Land Endeavor's Application to Quash is denied.

trial court did not order the filing of a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Radon asks us to consider one issue:

Whether the trial court erred in granting Land Endeavor's Motion for Summary Judgment as to Radon's claim that the [June 2015] contract, which contained new terms and conditions detrimental to Radon's financial interests, was signed under duress?

Appellants' Brief at 2.[3]

Our Supreme Court has instructed:

Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a

_____

[3] In addition to filing a brief, Radon has submitted a reproduced record consisting of two volumes, containing hundreds of pages of documents and measuring approximately three and a half inches in height. We remind Appellants' counsel that Pa.R.A.P. 2173 mandates that pages be numbered and Pa.R.A.P. 2174 directs that a reproduced record contain a full and complete table of contents. Appellants' reproduced record violates both rules. (By means of comparison, Appellees' properly numbered and indexed reproduced record, which is similar in size, spans 751 pages.)

genuine issue of material fact must be resolved against the moving party.

***Murphy v. Duquesne University of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001) (citations, quotations, and ellipses omitted).

Radon contends the trial court erred in granting summary judgment in favor of Land Endeavor because Greg signed the June 2015 agreement under duress, as confirmed by Greg's deposition testimony. Radon acknowledges Greg was not in fear of physical harm but contends Greg "was coerced into signing [the June 2015] subcontract as a result of [Donna] stating that if he left the meeting without signing the changed contract, the project would stop moving forward." Appellants' Brief at 7. In light of Donna's statement "and other coercive statements and tactics," Greg "was not free to leave the meeting to discuss his options with an attorney without being simultaneously terminated from the project[.]" ***Id.*** 7-8. Therefore, Greg "signed the contract under economic duress and business compulsion." ***Id.*** at 8.

Radon recognizes that mutual assent of contracting parties is required to form a valid contract; that persons who deal with each other on equal terms and at arm's length are presumed to possess ordinary firmness; and that, in the absence of threats of physical harm, there can be no duress if the contracting party is free to consult with counsel. ***Id.*** at 9 (citing ***Degenhardt v. Dillon Co.***, 669 A.2d 946, 950 (Pa. 1996)). ***See also McDonald v. Whitewater Challengers, Inc.***, 116 A.3d 99, 114 (Pa. Super. 2015)

(same).[4]  As this Court reiterated in **Adams v. Adams**, 848 A.2d 991 (Pa.

Super. 2004), "[w]e have long defined duress as 'that degree of restraint or

danger, either actually inflicted or threatened and impending, which is

sufficient in severity or apprehension to overcome the mind of a person of

ordinary firmness.'"  **Id.** at 993 (quoting **Strickland v. University of**

_____

[4] As this Court stated in **McDonald**, our Supreme Court has explained the issue of duress as follows:

> The formation of a valid contract requires the mutual assent of the contracting parties.  Mutual assent to a contract does not exist, however, when one of the contracting parties elicits the assent of the other contracting party by means of duress.  Duress has been defined as:
>
> > That degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness . . . . The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm . . . . Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness . . . . Moreover, **in the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel** . . . .
>
> **Degenhardt v. Dillon Co.**, 543 Pa. 146, 153-54, 669 A.2d 946, 950 (1996) (citations and punctuation omitted).

**Id.** at 114 (emphasis in original).  Radon does not suggest there were any threats of physical harm against Greg, a 37-year old at the time of his 2017 deposition, who stood 6'2" and weighed 280 pounds.  **See** Deposition of Greg Radon, 1/27/17, at 180-81.

*Scranton*, 700 A.2d 979, 986 (Pa. 1997) (additional citation omitted)). And, again, "[a] party who has reasonable opportunity to consult with counsel before entering a contract cannot later invalidate it by claiming duress." *Id.* at 994 (quoting *Degenhardt*, 669 A.2d at 950).

With regard to economic duress and business compulsion, this Court has noted:

> [B]roadly speaking, 'business compulsion' is a species of duress, not the common-law duress, to be sure, but duress clothed in modern dress. It seems to be established as a general rule, at least in this country, that the payment of money or the making of a contract may be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid, or excuse him from performing the contract.
>
> "Business compulsion" is not established merely by proof that consent was secured by the pressure of financial circumstances. But it is said that a threat of serious financial loss is sufficient to constitute duress and ground for relief where an ordinary suit at law or equity might not be an adequate remedy.
>
> To constitute duress or business compulsion there must be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future. It must be such a threat that, in conjunction with other circumstances and business necessity, the party so coerced fears a loss of business unless he does so enter into the contract as demanded.

*Tri-State Roofing Co. of Uniontown v. Simon*, 142 A.2d 333, 335 (Pa. Super. 1958) (quoting 17A Am.Jur. 564, § 7. Doctrine of Business or Economic Compulsion (1957)); *See also McDonald*, 116 A.3d at 114-15 (same).

In the instant case, Radon asserts that Greg's deposition testimony proves that Greg signed the June 2015 contract under economic duress. Radon claims:

> [Greg] testified that there was a four-hour meeting after which he signed the contract because he was financially committed and [John] kept reassuring him that he would not get hurt. [Greg] also stated that he had a lot of money and two years of his time invested in the project[.] [Greg] was forced by Donna [] to sign the contract as a direct result of threats she made to [Greg] that the "project (was) not going to move forward . . . until (he) signed the document." [Greg] was given an "ultimatum" by Donna [], which was to "sign it or (he) was not moving forward." "Not moving forward," according to [Greg's] testimony, meant that he was going to lose everything that he had put into the project. During the four-hour meeting, [Donna] told [Greg] that he was not leaving the office until he signed the contract, and [Donna] was physically standing in the doorway. [Greg] was "emotionally distraught" from the "whole situation" and the only thing that made "any type of sense" to relieve the pressure from the entire situation was [John] saying to him that "he was not going to let (him) get hurt." [Greg] testified that he was in fear of his "mental health" and stated that "(I)t's just like you wanted to pop a pill and just — to get out of that situation." In response to a question from Land Endeavor's counsel regarding intimidation during the four-hour meeting, [Greg] sated "(T)he intimidation was basically if you don't sign, you're not getting anything. That's intimidation. It's financial."

Appellants' Brief at 10-11 (citations to Greg's deposition omitted) (quotation marks and parentheticals in original). Radon then provided deposition excerpts explaining that the initial venture agreement was a two-page, straightforward agreement, simple enough that review by an attorney was unnecessary. *Id.* at 11-12. As for the June 2015 contract,

> The fact that the meeting lasted four hours clearly indicates that [Greg] did not attend the meeting that day with the intent of signing the contract, and, to the contrary, was determined not to

sign. It was only after four hours of threats by [John and Donna] not to move forward with the project, misrepresentations by John [] that [Greg] would not get hurt financially, and a specific threat made by Donna [], that [Greg] was not leaving the office that day without signing the contract, among other factors stated above, that [Greg] succumbed to the pressure and the reality of suffering a serious financial crisis if he did not agree to the contract, that [Greg] signed.

*Id.* at 12 (citations to Greg's deposition omitted). Although not mentioned in Radon's brief, Greg also recounted in his deposition that he had diarrhea and an upset stomach and was very distraught about signing the contract; that his wife, his father, and others discouraged him from signing it; and that it did not occur to him to have an attorney review it. Deposition of Greg Radon, 1/27/17, at 175, 181, 188. He also acknowledged that Donna gave him a copy of the proposed June 2015 contract at a meeting "a week to two weeks" before the four-hour meeting during which he signed the contract. *Id.* at 160. Therefore, he was in a position to seek review of the contract in advance of the meeting. His testimony suggests he availed himself of that opportunity in discussing the contract with his wife, father, friends, and best friend, but not an attorney. *See* Trial Court Opinion, 7/11/17, at 3 (unnumbered). He further testified that he went to lunch with John for an hour or hour and a half at the conclusion of the meeting during which he signed the contract. Deposition of Greg Radon, 1/27/17, at 207.

Viewing the evidence in the light most favorable to Radon as the non-moving party, we find no error in the trial court's grant of summary judgment and its rejection of Greg's claims that he signed the June contract under

- 11 -

duress. As the trial court explained, Greg was not physically threatened and had the opportunity to speak with an attorney prior to signing the contract. Again, Greg's own testimony indicates that approximately two weeks elapsed between the time Donna presented him a copy of the proposed contract and the time of the meeting during which he signed the document. While conceding he discussed the contract with "multiple people" prior to signing, it simply did not "dawn on" him that he should talk with an attorney. *Id.* at 188. Under the circumstances, the trial court properly determined that Radon's duress argument failed and that summary judgment was appropriate.

However, even if Greg established that he signed the contract under economic duress, summary judgment would be appropriate nevertheless. As this Court recognized in ***National Auto Brokers v. Aleeda Development Corp.***, 364 A.2d 470 (Pa. Super. 1976), economic duress merely renders a contract voidable, not void. *Id.* at 473 (citations omitted).

In ***National Auto Brokers***, we held that "[a] party who possesses a power of avoidance for business coercion loses it by electing to affirm the transaction." *Id.* at 476 (Pa. Super. 1976) (citing Restatement of Contracts, §§ 493, 495, 499 and 484 (1932)) (additional citations omitted). We recognized that "[r]atification results if a party who executed a contract under duress accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract." *Id.* (citation omitted). Here, only

- 12 -

after Land Endeavor terminated the agreement at the end of November 2015 for failure to perform did Radon claim the June 2015 contract improperly changed the terms of the earlier agreement. In other words, despite the claimed "economic duress," Radon continued with the project under the terms of the June contract for six months without taking any measures to set the contract aside. By remaining silent for six months after signing the contract, Radon ratified the agreement.

In **National Auto Brokers**, an initial contract was signed on July 4, 1972. The parties entered into a second contract on August 3, 1972, under which the National Auto Brokers ("Nabcor") operated until October 1972 when Nabcor filed a complaint in equity seeking performance under the July contract and claiming it entered into the August contract under duress. The passage of time in that case—two and a half months—was deemed sufficient to warrant a finding that Nabcor ratified the August contract. In the instant case, more than six months elapsed between the signing of the contract and Land Endeavor's notice of termination. Therefore, the period of time was "considerable" and Radon's actions ratified the June 2015 agreement, regardless of any claimed economic coercion. Because Radon ratified the contract, Radon lost the power to avoid the contract based on duress.

Finding no error on the part of the trial court in granting summary judgment, we shall not disturb its ruling. Further, recognizing this Court can affirm on any basis, **see, e.g., Commonwealth v. Clouser**, 998 A.2d 656,

661 n. 3 (Pa. Super. 2015), we further conclude Land Endeavor was entitled to summary judgment in light of Radon's ratification of the June 2015 agreement.

Judgment affirmed.  Application to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/19